## Patrick R. Bannon v. Joseph J. Sanden.

1. NEGLIGENCE—*Defective Machinery.*—If an injury results from a defect or insufficiency in the machinery or implements furnished to a servant by his master, knowledge of the insufficiency must be brought home to the master or proof made that he was ignorant of the same through his own negligence or want of care, before he can be held to be liable for such injury.

2. QUESTION OF FACT—*Whether Servant Should Inspect Appliance Furnished by Master is.*—In a suit by a servant against his master for injuries caused by the breaking of a scaffold it is error to instruct the jury that if defendant's foreman told plaintiff that the scaffolding was all right and ready for him to go to work upon, and instructed him to go to work upon the same, that that absolved plaintiff from any care ·in inspecting the construction of the scaffolding himself to ascertain whether it was safe or not. In such a case it is rather a question of fact than of law whether the plaintiff should inspect the scaffolding before going upon it.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Will County. The Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the May term, 1896. Reversed and remanded. Opinion filed December 9, 1896.

HALEY & O'DONNELL, attorneys for appellant.

MORRILL, SPRAGUE and E. MEERS, attorneys for appellee.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

The appellant was·a contractor for the Phœnix Horse Shoe Company and contracted to build four buildings in the city of Joliet for it. He contracted to do the stone and carpenter work.

He had about completed the buildings and was proceeding to have the buildings beam-filled at the point of contact of the rafters and the stone work of the buildings, and appellant was directed to do the work.

One Parker Peck was his foreman and appellee was one of the stone masons to do the work.

The beam-filling was being done on the punching rooms

and the roof sloped or pitched to the east or west, and was supported by iron trusses.

The beam-filling was confined to the east and west walls of the building, which were fourteen to sixteen feet high. Scaffolding was so placed near the top of the walls that the body of a mason came up on a level with his work, which would bring the bottom of the scaffold about ten feet from the ground.

The scaffold in question on the west side of the building was so constructed at the north end of it that it was supported by a 4 x 4 piece of pine timber from seven to ten feet in length, and one end resting upon what was denominated an " I " beam, the other end resting upon the wall.

The south end was supported by another contrivance. Lengthwise of the scaffold were pieces of pine timber 4 x 6 inches in size and in the neighborhood of twenty feet in length. Cross-timbers were then placed at intervals of two to three feet and over them were two-inch planks, and then upon the bed thus formed planks were laid across the one-inch boards so as to make a platform about three feet in width. The scaffold was reached by a ladder projecting about a foot above the top of the scaffold, and then a hand-board, fastened on one side, extended between one and two feet higher than the ladder. Upon the scaffold thus constructed two masons worked beam-filling, and three tenders brought up the stone and mortar as required to put in the wall. This same scaffolding had been in use in doing the work on other parts of the building, and the same 4 x 4 piece, which afterward broke, had been used in the scaffold before, and appellee worked on it.

Such a scaffold, as all the workmen understood, to insure safety, should not be overloaded, and in this instance the masons and tenders were cautioned not to overload the scaffold.

On the 26th day of May, 1893, in the forenoon, this scaffolding was put in position and the masons ordered to go to work. They continued to work up to the noon hour, and after noon began work again. The tenders had placed

from two to three hundred pounds of stone and mortar upon this scaffold, and perhaps more. One of the tenders brought up a load of stone and, instead of using care in placing it upon the scaffold, he threw it down in a violent manner and a 4 x 4 piece of timber, supporting the scaffold at the north end, gave way or broke within a foot or eighteen inches of the wall where it had been built into the wall.

The north end of the scaffold fell to the ground and with it appellee, and in falling broke his ankle, and this action was brought to recover damages.

The declaration based the grounds of action upon the alleged negligence of the appellant in not furnishing safe material for the scaffolding, by reason of which it broke, and that the appellant by his foreman directed the appellee, who had no knowledge of the unsafe condition of the scaffolding, to go upon it to complete the wall, and that the appellee while exercising due care went upon it, and on account of the unsafe material and the manner in which it was constructed, it broke and he fell to the ground as stated, breaking his right leg.

The cause was tried before a jury and it brought in a verdict of $5,000 in favor of the appellee, and on motion for a new trial the court required him to remit $2,500, which he did, and the motion was overruled and judgment was entered against the appellant for $2,500 and costs.

From the judgment this appeal is taken.

There are several points urged upon us by counsel for the appellant as good cause for reversal, the principal one of which is that the evidence fails to show the negligence of the appellant in furnishing a good scaffolding, or the timber of which it was composed, by means of which the injury occurred.

The evidence shows, or tends to show, that there was a small invisible knot in the 4 x 4 piece of timber upon which the scaffolding rested that may have caused it to break with a less strain upon it than it otherwise would, and which, if it had been known to appellant, it would not have been proper to have used in the scaffolding in the manner in which it was used.

The evidence also tends to show that the break in the supporting timber might have been caused by the dumping down of the hod by the hod carrier in a violent manner on the scaffold floor when emptying it of stone, and in connection with the weakness of the timber, caused the break and the consequent fall of the scaffold.

If the injury was caused by the negligence of the hod carrier, then the appellant would not be responsible for the consequence of such negligence, as the hod carrier and the appellee were clearly fellow-servants of a common master.

Whether the appellant was negligent in not discovering the defect in the timber, is the main question that requires consideration by us.

It is laid down in Chicago & Alton R. R. Co. v. Platt, 89 Ill. 141, that a master is not responsible for latent defects in machinery furnished by him to his servant, and the court uses this language: "It will not be contended that a railroad company will be responsible for a latent defect in the boiler of the engine, or a flaw in a broken rail, of which they had no knowledge, everything to the eye appearing right, and the usual tests discovering no defect."

It is also held in C. C. & I. Central Railway Co. v. Troesch, 68 Ill. 545, that "if injury arises from a defect or insufficiency in the machinery or implements furnished to the servant by the master, knowledge of the insufficiency must be brought home to the master, or proof made that he was ignorant of the same through his own negligence or want of care; in other words, it must be shown he either knew or ought to have known the defect which caused the injury; * * * beyond that they owe no duty to their employes, whatever may be their duty to passengers."

In Goldie et al. v. Werener, 151 Ill. page 551, the court holds that the plaintiff, in order to recover, is required to establish, first, that the appliances were defective, second, that the master had notice or knowledge thereof, or ought to have had, and third, that the servant did not know of the defect and had not equal means of knowing with the master.

It is contended that a proper examination was not made

of the timber that afterward broke before using it, but we are of the opinion that from the fact it had been used four or five times in the scaffolding without breaking, and from the fact that an examination would not have disclosed any knot in the timber, that an examination would have been useless, unless appellant's foreman had taken the extreme precaution to test the strength of every timber in the scaffold, which we do not think he was required to do.

The evidence of Parker Peck, John Watson, and P. R. Bannon, the appellant, proves that there was no knot perceptible until after the timber broke, only that the wood was a little curly where it broke. The "saw-scarf" did not run to the knot.

There could be found no reason why the timber broke.

There was no sign on the outside where the stick broke— nothing visible.

The evidence also shows that similar timber was ordinarily used for scaffolds, and nothing else used by anybody in the building, and that the strength of such a stick placed as that was, was about 2,200 pounds placed on the scaffold.

We think, therefore, under the evidence in the case that the jury was not justified in finding the appellant negligent in using the stick of timber in question.

Appellant complains, also, that the court erred in giving appellee's eighth instruction, which, in substance, was that if the appellant's foreman told appellee that the scaffolding was all right and ready for him to go to work upon, and instructed him to go to work upon the same, that that absolved appellee from any care in inspecting the construction of the scaffolding himself to ascertain whether the same was safe or not.

We are of the opinion that in view of the evidence in the case that the instruction was erroneous. It was rather a question of fact than of law, whether the appellee ought or ought not to have inspected the scaffolding and timbers composing it before going upon it. All that the foreman told appellee was that the scaffold was complete and ready to go to work upon, and there was no peremptory order to

go upon it. But, under the circumstances, we might not regard the giving of this instruction as reversible error, as probably, under the evidence in the case, appellee should not be charged with contributory negligence.

The refusing to give appellee's twenty-third instruction under the facts in the case was not error.

The appellant asks for a reversal on account of the prejudices of William Gorman, one of the jurors, and therefore his incompetency.

We are inclined to think that this juror was incompetent, and, if the affidavits filed were true, he was a very unfit person to sit on the jury on account of a deep-seated prejudice against the appellant, which he denied on his *voire dire;* but as the judgment in this case will be reversed for another reason, we need not consider that question.

For the reason that the evidence failed to support the verdict, the judgment of the court below is reversed and the cause remanded.